Carmen Dolores Rodríguez et al., Plaintiffs and Appellees, *v.* Gregorio Cortés Rodríguez, Defendant and Appellant, and Municipality of Utuado, Defendant.

No. 7035. Argued May 26, 1936.—Decided May 26, 1937.

*Antonio Suliveres* for appellant. *Luis Mercader* for appellees. *Francisco R. Flores* for the municipality.

Mr. Justice Hutchison delivered the opinion of the court.

Gregorio Cortés, the defendant in a revendicatory action, appeals from an adverse judgment and says: first, that the district judge erred in finding that after the hurricane (mean-

ing the hurricane of 1928, known as San Felipe) the value of the house in question "could not be more than $250"; second, that the district judge erred in not finding that Cortés purchased from Ana Olmo only whatever right she might have had to the lot, as the house had been destroyed by the hurricane; and, third, in finding that Cortés, after purchasing the house in bad condition, completed the destruction thereof and then built the new concrete house now in his possession.

■ Any technical defect in the reasoning of the district judge will not require a reversal or a modification of the judgment if the evidence be sufficient to sustain his finding as to the value of the house or as to what was left of it after the hurricane. Witnesses for defendant greatly out-numbered the witnesses for plaintiffs. The testimony for plaintiffs tended to show that the house inspected by them sometime after the hurricane was in fair condition and inhabitated. The testimony for defendant tended to show that the house described by these witnesses was not the house in controversy and that the house in controversy had been demolished by the hurricane, not by Cortés. Perhaps it would suffice to say that there was sufficient evidence to sustain the finding of the district court that the house, or what was left of it after the hurricane, was worth $200 and that Cortés was liable for that amount. We need not rest our decision, however, on that point.

■ Enrique González, from whom Ana Olmo purchased the house, had obtained possession thereof under an alleged oral agreement with the father of plaintiffs, who were minors. There was no judicial authorization for the alienation of plaintiffs' property and, neither González nor Ana Olmo acquired any title. Cortés, of course, took nothing by his purchase from Ana Olmo.

■ The Municipality of Utuado in 1900 granted the use of a lot for an unlimited period for the purpose of building

a house thereon. The grantee then built a house, which in 1925 became the property of plaintiffs. It may be conceded that what was left of the house after the hurricane had little or no intrinsic value and was not in fact used by Cortés in the building of the concrete house. It may be conceded that the grantee of the municipality could not transfer his right to the use of the lot and that plaintiffs never acquired any right to such use. It may be conceded that, if plaintiffs had any such right, it was extinguished when the house was destroyed by the hurricane. It may be conceded that plaintiffs had no legal claims upon the municipality to preference in the granting of a new concession for the purpose of building another house upon the same lot. Nevertheless, plaintiffs, as the owners of the débris, did have a moral and equitable right to such preference. It is not probable that the municipality would have granted another concession to a stranger without notice to plaintiffs and a hearing, or that it would have rejected plaintiffs' claim to such a preference if asserted by them. See *Casanovas* v. *Municipality of Mayagüez,* 31 P.R.R. 267; *Municipality* v. *Vélez,* 48 P.R.R. 616; *Municipality* v. *García,* 48 P.R.R. 797. Thus, from the standpoint of any one interested in obtaining a concession from the municipality, there were certain advantages incident to the ownership of the débris, which, as evidence of actual or constructive possession and of at least an inchoate or equitable right to rebuild, had a certain monetary value. Prior to the day of the hurricane, there was a party wall of masonry between plaintiffs' house and a small adjoining house already owned by Ana Olmo. Within a few days after the hurricane Cortés purchased this small house from Ana Olmo. Later, he repaired the party wall. The house was too small for his family and he wished to build a larger house on the adjoining lot. He testified that other parties who also wanted to build on the adjoining lot were interested. He also testified that Ana Olmo was starving and was herself unable to re-

build when he paid her $200 for whatever right, title, and interest she might have had in the lot. The fact that he was willing to pay and did pay Ana Olmo for whatever right, title, or interest she might have had in the lot (with or without knowledge of the further fact that she had no right, title, or interest therein) and that he did this because other parties were also interested in the same matter, clearly indicates that the fair market value of the débris, was not less than $200. See 38 C. J. 1261, 1262, sections 17 and 18.

As a matter of fact, however, the district judge did not believe the testimony of Ana Olmo and of Cortés to the effect that Cortés purchased or attempted to purchase nothing more than Ana Olmo's alleged right, title, or interest in the lot. Ana Olmo testified that her tenants, who occupied the house which she says was destroyed by the hurricane, remained therein during the hurricane and for several days thereafter until they could find shelter elsewhere. We think the district judge was entitled to believe this much of Ana Olmo's testimony, notwithstanding the fact that other testimony for defendant might have justified the alternative conclusion—that the people referred to by Ana Olmo were not her tenants but refugees who constructed a temporary shelter out of loose pieces of galvanized iron. Moreover, if the witnesses for plaintiffs spoke the truth, Cortés himself, before the bringing of the present action, admitted that he had purchased what remained of the house after the hurricane, had completed the destruction thereof and had used a part of the material in the building of his new concrete dwelling. He also admitted in his answer that he had purchased the débris from Ana Olmo, but denied that he had used any part thereof in building his own house. We find no such manifest error in the weighing of the evidence as to justify a reversal.

The fourth assignment is that the district court erred in holding that the right conferred by the municipality upon its alleged grantee was susceptible of transfer to the successive owners of the house.

This court has heretofore assumed that the use and occupancy of city lots, granted by the municipalities for the purpose of erecting permanent buildings thereon in accordance with plans and specifications previously approved by the municipalities, pass from vendor to vendee under sucessive deeds of conveyance. See cases cited *supra*. The specific question here sought to be raised by the appellant under sections 454 and 456 of the Civil Code (1930 ed.) has not been decided. Up to the time of the hurricane, plaintiffs were the owners of the house built by the grantee of the municipality including the masonry wall or at least an undivided interest therein, if it was in fact a party wall. 9 Scaevola 214, 215; 4 Manresa 393; 3 Sánchez Román 572, After the hurricane they were the owners of what was left of the house, including the party wall or an undivided interest therein, if it was a party wall. Cortés, as the vendee of Ana Olmo, and, therefore, as the alleged successor in interest of plaintiffs, and, through them, of the original grantee of the municipality, built his concrete house upon the lot and then, as owner of the concrete house, obtained from the municipality a deed of conveyance to the lot itself for a consideration of $1.00 and notary's fees. This conveyance was executed under the authority of a municipal ordinance, sections 1 and 2 of which read as follows:

"Section 1.—Until June 30, 1932, the actual bona-fide usufructuaries of urban lots belonging to the Municipality of Utuado may acquire said lots by purchase, without competition, for the sum of one hundred (100) cents, whatever may be the perimeter of said lots, and whatever may be the zone in which said lots may be located; the expenses of the deed being borne by the purchaser; *Provided,* that the mayor is now authorized to measure and set the limits of each lot sought to be purchased, and to execute the deed in each case, in behalf of the municipality.

"Section 2.—In the future, no vacant lot belonging to the municipality and located in the first and second zones of edifications may be transferred in usufruct. Said lots may be sold only at the price fixed by this municipal assembly in each particular case."

Section 70 of the Municipal Law (Session Laws of 1928, p. 390) reads in part as follows:

"Section 70.—On petition, the municipal assembly may grant lots in perpetuity for the construction of houses thereon, under such conditions as the assembly may determine by ordinance approved for the purpose; and where a lot has been granted as aforesaid, the owner of the house constructed thereon shall have the use of said lot during such time as he maintains on said lot a building in good condition, in accordance with regulations prescribed by said ordinance.

"Municipal assemblies shall specify in such concessions as they may make, the respective rights of the grantor and grantee, or their successors, as to the ownership of the buildings or the reconstruction thereof in cases where they are destroyed or become deteriorated.

"The concession shall necessarily be made by an ordinance or resolution adopted by the majority of the total number of members of the assembly; *Provided,* That no petition shall be taken into consideration if the petitioner does not attach thereto the plans and estimates for the building to be constructed on the lot applied for, so that the assembly may be cognizant of the work in granting the concession.

"Failure on the part of the grantee to comply with the conditions imposed by the resolution of the municipal assembly concerning each concession by the municipality, shall be considered sufficient for the revocation of said concession by the municipality, if the grantee, on request of the interested municipal assembly, does not proceed to remedy the omission or infraction within such reasonable time as he may be granted by it for the purpose.

"When the municipal assembly believes that it must consider the question of the forfeiture of one of these concessions, the grantee shall be summoned at least thirty (30) days in advance so that he may appear before the assembly in defense of his right, at a meeting to be held for the purpose. Upon hearing the interested party, the assembly shall decide, pursuant to law and in accordance with the evidence presented; and the resolution adopted shall be final unless the grantee appears, within thirty days after he has been notified of the decision, and files the proper action before the district court of the district to which the municipality belongs; and after the case has again been heard in said court, its decision shall be final.

"Among the terms of the concession made in each case, that of payment of an annual rental to the municipality making the conces-

sion may be prescribed, which rental shall be at least equal to the amount of the property tax which would appertain to said property if such property were subject to the payment of such tax, and in the aforesaid concession there shall also be stipulated that any building on the property leased shall be subject to the payment of taxes.

"Every grantee of a lot built upon under a previous concession, desiring to obtain the permanent ownership of such lot granted to him, may acquire the same without the need of public auction, and the municipal assembly may so determine by an ordinance providing for the fixing of the rate at which the said lots shall be sold in each urban zone."

We need not at this time determine what rights plaintiffs might have had in the lot itself after the hurricane of 1928, in the absence of an ordinance enacted by the Municipality of Utuado in accordance with the provisions of section 70 of the Municipal Law.

The fifth assignment is that the district court erred in holding that "whatever the title or prayer of the complaint might be," the judgment should provide for the recovery by plaintiffs of the value of the house which Cortés purchased from Ana Olmo and destroyed in order to build the new one, and in holding that Cortés could not plead ignorance because plaintiffs had recorded their right and Ana Olmo exhibited no valid title upon which to base a belief in good faith that she was the rightful owner.

The title of the complaint did not indicate the nature of the action. The question as to plaintiffs' right to recover the value of the house alleged to have been destroyed by Cortés, was clearly "consistent with the case made by the complaint and embraced within the issue." See section 191, Code of Civil Procedure. Cortés may have believed in good faith that the father of plaintiffs would obtain a judicial authorization for the alienation of plaintiffs' property and would thereupon execute a deed of conveyance to Ana Olmo's vendor. He had no reason to believe that Ana Olmo was the owner of the property.

We are inclined to agree with appellant that there was no satisfactory basis in the evidence for the recovery of mesne profits and that the defendant should not be mulcted in costs.

The judgment will be modified accordingly, and as modified, affirmed.